**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

_____

DUVEL BROWN, individually and as parent
and next friend of KUVEL BROWN, a minor,

     **Plaintiff,**

    v.

DISTRICT OF COLUMBIA, a municipal
corporation; DISTRICT OF COLUMBIA PUBLIC
SCHOOLS (DCPS); VICKI NELSON,
in her individual and official capacity; and
PRINCIPAL JAIMEE TRAHAN,
in her individual and official capacity,

     **Defendants.**

_____

Civil Action No.: 1:26-cv-1415

**COMPLAINT FOR DAMAGES**
(Jury Trial Demanded)

**PRELIMINARY STATEMENT**

This action arises out of the brutal and unprovoked physical assault of Kuvel Brown, a six-year-old child with special education needs enrolled in kindergarten at Neval Thomas Elementary School, Washington, D.C. On or about April 25, 2024, Defendant Vicki Nelson, a teacher employed by the District of Columbia Public Schools, struck Kuvel hard across the face without provocation while he was playing in the school gymnasium during the before-care program (approximately 7:00 a.m. to 8:45 a.m.), while she was on duty performing her supervisory responsibilities. Defendants' actions and omissions — including retaining the assailant on school premises and permitting her to continue working in the same before-care program following the assault, failing to properly notify parents, making false statements to conceal the nature and severity of the assault, failing to comply with mandatory child abuse reporting obligations, and obstructing the family's participation in the investigation — caused Kuvel Brown to suffer severe

and ongoing physical and psychological injuries. Plaintiff brings this action pursuant to D.C. common law, 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 et seq.

**PARTIES**

1.      Plaintiff Duvel Brown is the father and natural parent of Kuvel Brown, a minor child. He brings this action individually and as next friend and parent of Kuvel Brown. At all relevant times, Plaintiff and Kuvel Brown resided in Washington, D.C.

2.      Kuvel Brown is a minor, age six (6), enrolled in kindergarten at Neval Thomas Elementary School. He is a student with a qualifying disability who has been determined eligible for special education services and has an Individualized Education Program (IEP) in effect at all times relevant herein. His rights as a student with a disability are protected under Section 504 of the Rehabilitation Act and the ADA.

3.      Defendant District of Columbia is a municipal corporation that operates and is responsible for the District of Columbia Public Schools system, including Neval Thomas Elementary School located at 1300 44th Street NE (also referenced as 650 Anacostia Ave NE), Washington, DC 20019. The District of Columbia receives federal financial assistance and is subject to the requirements of Section 504 and the ADA.

4.      Defendant District of Columbia Public Schools (DCPS) is an agency of the District of Columbia responsible for the administration, supervision, and oversight of all public school employees and operations within D.C., including Neval Thomas Elementary School. DCPS receives federal financial assistance and is subject to the requirements of Section 504 and the ADA.

5.      Defendant Vicki Nelson (also referred to as 'Ms. Vicki') was, at all relevant times, employed as a teacher or staff member by DCPS at Neval Thomas Elementary School. At the time

of the incident, she was on duty and performing her assigned supervisory responsibilities in the before-care program. She is sued in her individual capacity. It is Plaintiffs' understanding that Ms. Nelson was subsequently arrested, prosecuted, and pled guilty to criminal charges arising from this incident.

6. Defendant Principal Trahan was, at all relevant times, the principal of Neval Thomas Elementary School, employed by DCPS, with direct supervisory authority over school staff including Defendant Nelson. She is sued in her individual capacity. As principal, Trahan had actual knowledge of the assault on the date it occurred, took affirmative steps to minimize and misrepresent the nature of the assault to Kuvel's parents, denied the family access to the investigation, and failed to take required remedial action.

### JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to D.C. Code § 11-921, which confers general civil jurisdiction upon the Superior Court of the District of Columbia over all civil actions at law and in equity.

8. Plaintiffs have complied with the notice requirements of D.C. Code § 12-309. Notice was provided to the District of Columbia through two independent documents, each submitted within six (6) months of the April 25, 2024 incident:

(a) **Victim Impact Statement (July 22, 2024):** On July 22, 2024 — within three (3) months of the incident — Plaintiff Duvel Brown individually submitted a written victim impact statement to the Office of the United States Attorney for the District of Columbia in connection with the criminal prosecution of Defendant Vicki Nelson, a DCPS employee. That statement, signed by Duvel Brown in his individual capacity, described Kuvel Brown's ongoing PTSD symptoms, his persistent fear of school staff, his special education status, the school's failure to

remove Nelson following the assault, and the emotional distress suffered by Duvel Brown personally as a result of Defendants' conduct. This statement was submitted directly into a criminal proceeding arising from the conduct of a District employee and constituted written notice to the government of the nature and extent of both Kuvel Brown's and Duvel Brown's individual injuries within the statutory period.

(b) **Formal § 12-309 Notice Letter (October 23, 2024):** On October 23, 2024, counsel for Plaintiffs submitted a formal written notice of claim to the Office of Risk Management of the District of Columbia, addressed to the Mayor, within six (6) months of the incident. That notice described: the April 25, 2024 assault by a DCPS teacher; the school's failure to remove Nelson following the assault; Principal Trahan's false and minimizing statements to the family; the follow-up call denying the assault had occurred; Kuvel's PTSD symptoms and ongoing anxiety; the family's meeting with Principal Trahan on April 29, 2024; the denial of investigative access; and the criminal prosecution of Nelson. The District acknowledged receipt and assigned Claim Number C-GL-24-07027 on October 25, 2024.

Taken together, these two documents provided the District of Columbia with actual, written notice of all claims asserted herein — including Duvel Brown's individual claims — within six (6) months of the incident, fully satisfying the purpose of § 12-309. To the extent any defendant were to assert1, that additional or separate notice was required for Duvel Brown's individual claims, such notice was excused or tolled by the fraudulent concealment doctrine, as the false and misleading statements made directly to Duvel Brown by Defendants on April 25–26, 2024 prevented him from timely discovering the full scope of the institutional misconduct directed at him personally. The § 12-309 notice requirement applies only to common law tort claims against the District; it does not apply to the federal statutory claims asserted in Counts VII and VIII.

4

9.     This Court also has jurisdiction over the federal claims brought pursuant to 42 U.S.C. § 1983, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the ADA, 42 U.S.C. §§ 12131 et seq. Pendent jurisdiction exists over the D.C. common law claims.

10.     Venue is proper in this Court because all events giving rise to this action occurred within the District of Columbia.

## FACTUAL ALLEGATIONS

### A.     The Assault

11.     On or about April 25, 2024, at approximately 7:00 a.m. to 8:45 a.m., six-year-old Kuvel Brown was present at Neval Thomas Elementary School participating in the before-care program (the supervised morning program held prior to the start of the regular school day) at the school gymnasium. The District of Columbia's own Office of Risk Management recorded the time of loss as 8:45 a.m. on April 25, 2024, consistent with the before-care program hours alleged herein.

12.     During that before-care period, Kuvel was engaged in a normal childhood activity — tossing a football back and forth with another student.

13.     Without any provocation, warning, or justification, Defendant Vicki Nelson, then on duty as supervisory staff in the gymnasium during the before-care program, approached Kuvel and struck him hard across the face with an open hand. At the time of the assault, Nelson was performing her assigned role of supervising children in the before-care program. Her conduct, while unlawful, occurred in the course of her exercise of authority over students in her charge.

14.     Kuvel is a six-year-old child enrolled in the special education program pursuant to an active IEP. He requires individualized support, a safe and nurturing environment, and heightened care from school staff. Defendant Nelson was or should have been aware of Kuvel's

special education status and IEP. The failure to protect a special education student from physical assault by a supervising teacher directly denied Kuvel a safe environment in which to receive his free appropriate public education (FAPE).

**B.    The Institutional Response and Cover-Up**

15.    Following the assault, Kuvel was taken to the nurse's office and then to the principal's office. Principal Trahan had actual, first-hand knowledge of the nature and severity of the assault on the date it occurred.

16.    At approximately 10:00 a.m. on April 25, 2024, Principal Trahan telephoned Kuvel's mother at work to inform her of 'the incident.' Trahan characterized the assault as Kuvel being 'popped' and stated 'there was no need to be upset or worried because the situation was being taken care of.' These statements were materially false and misleading, and were made with knowledge of their falsity, for the purpose of inducing the family to refrain from contacting law enforcement, seeking immediate medical attention, or otherwise taking protective action.

17.    Later that same day, Kuvel's father, Duvel Brown, picked Kuvel up from school and discovered that his son had not merely been 'popped,' but had been struck hard across the face by an adult teacher.

18.    Upon Kuvel's return home, his mother received a follow-up phone call from the school falsely claiming that Kuvel had not in fact been slapped by the teacher, directly contradicting the earlier communication. This second false statement was made to Duvel Brown's household directly, as a communication intended to dissuade the family from taking legal or protective action.

**C.      Failure to Comply with Mandatory Child Abuse Reporting Obligations**

19.     D.C. Code § 4-1321.02 requires school personnel — including teachers, principals, and other staff — to immediately report to the Metropolitan Police Department and the Child and Family Services Agency any known or reasonably suspected instance of child abuse, including physical abuse inflicted by school staff. This reporting obligation is mandatory and ministerial; it admits of no discretion.

20.     The physical assault of a six-year-old student by a DCPS teacher constitutes child abuse within the meaning of D.C. Code § 4-1321.02. Defendant Trahan and DCPS administrators had an immediate, non-discretionary obligation to report the assault to law enforcement and child protective services on the date it occurred.

21.     Upon information and belief, Defendants failed to make the mandatory report required by D.C. Code § 4-1321.02 on the date of the assault or at any time within the mandatory reporting period. This failure was not a policy judgment or discretionary act — it was a violation of a specific, mandatory statutory duty imposed on school personnel.

22.     This failure to report directly harmed Kuvel Brown by: (a) delaying law enforcement investigation of the assault; (b) prolonging Nelson's presence at the school where she continued to have contact with students including Kuvel; and (c) depriving the family of the intervention of child protective services to which they were entitled.

**D.      Retention of Nelson and Obstruction of Investigation**

23.     Notwithstanding the assault, DCPS permitted Defendant Vicki Nelson to continue working at the school — including in the same before-care program (7:00 a.m. to 8:45 a.m.) where the assault took place, as well as throughout the remainder of the school day — for an extended period following the incident. Kuvel's aunt observed Ms. Nelson still working at the school the

very day after the assault, on April 26, 2024. Plaintiff Duvel Brown confirmed in his July 22, 2024 victim impact statement submitted to the Office of the United States Attorney that the school permitted Nelson to continue working in the program where the incident occurred, causing Kuvel ongoing anxiety and fear upon seeing her. Ms. Nelson continued to work at the school until she was ultimately arrested.

24.     On April 29, 2024, Kuvel's parents met with Principal Trahan and requested an opportunity to participate in the investigative meeting conducted by the DCPS Labor Management Employee Services investigator. Principal Trahan denied this request without explanation. Kuvel's father was subsequently denied the opportunity to attend the investigation in person despite advising he could arrive within fifteen (15) minutes. The investigator communicated with him only by telephone.

25.     The investigator later informed Kuvel's father that 'Vicki Nelson is being prosecuted.' The Assistant United States Attorney assigned to the criminal matter contacted the Brown family and was referred to counsel. It is the understanding of Plaintiffs and counsel that Vicki Nelson subsequently pled guilty to the criminal assault charge.

26.     **The Victim Impact Statement.** On July 22, 2024 — within three months of the assault and well within the six-month § 12-309 notice period — Plaintiff Duvel Brown individually submitted a written victim impact statement to the Office of the United States Attorney for the District of Columbia in connection with the criminal prosecution of Defendant Vicki Nelson. In that statement, Duvel Brown described in his own words: Kuvel's persistent PTSD symptoms and daily anxiety at school drop-off; Kuvel's repeated questioning of whether a teacher would hit him again ('If I get in trouble, will the teacher hit me?'); his own personal burden of constantly reassuring his traumatized child; Kuvel's special education status and the particular vulnerability

of a child who 'thinks differently than other students'; the school's failure to remove Nelson, which caused Kuvel additional distress from seeing her; and his own frustration and anguish that his son no longer felt safe at school. The statement was signed by Duvel Brown individually and constitutes written notice to the District of Columbia — through a proceeding initiated against its own employee — of both Kuvel Brown's and Duvel Brown's individual injuries within the statutory notice period.

**E.     Harm to Kuvel Brown and Duvel Brown**

27.     The following morning, April 26, 2024, Kuvel exhibited severe anxiety at school drop-off, displaying symptoms consistent with Post-Traumatic Stress Disorder (PTSD). He repeatedly asked his father, 'If I get in trouble, will the teacher hit me?' and expressed fear that a teacher would hit him again. As Duvel Brown described in his July 22, 2024 victim impact statement, he was required to constantly reassure Kuvel that 'everything would be okay and that no one would put their hands on him.' These symptoms have continued and have materially disrupted Kuvel's ability to engage in his educational program.

28.     As a direct and proximate result of the assault and Defendants' failure to protect Kuvel, he has suffered ongoing and severe emotional distress, anxiety, PTSD, and disruption to his academic progress and development. The long-term impact of these injuries on Kuvel's academic career and emotional well-being remains to be fully determined. Kuvel has been referred for and has received psychological evaluation and treatment as a result of these events.

29.     Plaintiff Duvel Brown suffered individual injuries that are separate from and in addition to his distress as a parent of an injured child. As documented in his July 22, 2024 victim impact statement — written in his own hand, signed individually, and submitted to a federal prosecutor within the statutory notice period — Duvel Brown described: his personal burden of

'constantly' reassuring a traumatized child; his own anguish that 'sending him to school he no longer feels safe'; and his individual frustration that 'something so illegal could happen at a public school.' Beyond these injuries, Defendants directed specific, independent tortious conduct at Duvel Brown personally: the false statements on April 25–26, 2024 were made directly to him and his household; the denial of investigative access on April 29, 2024 was made in direct response to **his** specific requests; and the institutional obstruction was aimed at him as the identified parent pursuing accountability. Duvel Brown's individual claims are not bystander or derivative claims — they arise from conduct of Defendants directed at him personally and documented in a contemporaneous written record submitted to the government months before this action was filed.

## F.      Systemic Policy and Supervision Failures

30.      DCPS and Defendant District of Columbia had actual or constructive notice of the risk of physical harm to students in the before-care and aftercare programs at Neval Thomas Elementary School, including risks posed by inadequately supervised or screened staff. Upon information and belief, prior complaints, disciplinary records, or supervisory concerns existed with respect to the conduct of staff assigned to work with young students in these programs, which Defendants knew or should have known prior to the assault. That notice is further confirmed by a second incident of teacher-caused physical harm to a kindergarten student at the same school: upon information and belief, on or about May 23–24, 2024 — approximately thirty (30) days after the assault on Kuvel Brown — a DCPS staff member at Neval Thomas Elementary School directed a student to physically punch a six-year-old kindergartner in the face during the aftercare program. Principal Trahan was the responding administrator in that incident as well. That the same school, under the same principal's supervision, produced a second instance of teacher-caused physical harm to a kindergarten student within thirty days of the first — and after Trahan had actual

knowledge of the Kuvel Brown assault — is direct evidence that Defendants implemented no meaningful corrective supervisory measures following the April 25, 2024 incident and that the supervisory failures were structural and school-wide, not attributable to any single employee.

31.     Defendants failed to implement adequate policies, procedures, and training to prevent physical abuse of students by staff, failed to train staff assigned to work with special education students on the specific behavioral and legal requirements of working with IEP-eligible students, and failed to enforce mandatory removal and reporting protocols when abuse was reported. These failures reflect a pattern or practice of deliberate indifference to the safety of students in DCPS's care, and were the moving force behind the constitutional and statutory violations suffered by Kuvel Brown. That this pattern extends beyond the Kuvel Brown incident is confirmed by the District's own institutional response to the second incident referenced in paragraph 30: upon information and belief, the District of Columbia Office of Risk Management denied that family's claim in its entirety on the sole stated ground that 'DCPS's internal investigation determined that the allegations alleged by your client are unfounded' — a determination made by the very agency whose employee caused the harm, without independent review. This self-referential denial process, applied to corroborated accounts of teacher-directed assault of a child, is itself documentary evidence of the District's custom of using institutional self-investigation to insulate itself from accountability for the unconstitutional conduct of its employees.

32.     The decision to retain Nelson on campus following the assault — and the decision to deny parental access to the investigation — were not the result of the exercise of any legitimate policy discretion, but rather represent the enforcement of an unofficial custom of institutional self-protection at the expense of student and family rights. These decisions were made at the level of

school principal and DCPS administration, not by front-line employees acting unilaterally. This custom is further evidenced by the institutional response to the second incident referenced in paragraph 30: upon information and belief, in that matter the DCPS investigator attempted by telephone to persuade the child's mother to allow the minor student to be interviewed without a parent present — a tactic that, if successful, would have given DCPS unsupervised control over the child's account of the incident. The mother refused and insisted on attending in person. That DCPS investigators employed this tactic in a separate student-assault investigation at the same school, within thirty days of the Kuvel Brown investigation in which the family was similarly denied meaningful investigative participation, demonstrates a recurring, school-level custom of managing student-assault investigations in ways designed to minimize parental oversight and control the institutional narrative.

## CAUSES OF ACTION

### COUNT I
### ASSAULT AND BATTERY
### (Against Defendants Vicki Nelson, District of Columbia, and DCPS)

33.    Plaintiff incorporates and re-alleges paragraphs 1 through 32 as if fully set forth herein.

34.    On or about April 25, 2024, Defendant Vicki Nelson intentionally and without justification or consent struck Kuvel Brown, a minor child, hard across the face with an open hand.

35.    This intentional, harmful, and offensive physical contact constitutes battery under D.C. common law. See *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1994).

36.    At the time of the assault, Defendant Nelson was on duty in her assigned supervisory role during the before-care program. Her conduct — while tortious — occurred in the

direct exercise of the authority delegated to her by DCPS to supervise, manage, and discipline students in her charge. Under D.C. law, an employer may be held vicariously liable under respondeat superior where the employee's tortious act, even if unauthorized or excessive, arose from conduct within the scope of authorized duties. See *Boykin v. District of Columbia*, 484 A.2d 560 (D.C. 1984). The use of physical force in the management of students, however wrongful, is not so unrelated to Nelson's supervisory function as to constitute a personal frolic. Both the District of Columbia and DCPS, as Nelson's joint employers, are vicariously liable.

37.    As a direct and proximate result of this assault and battery, Kuvel Brown has suffered physical harm, severe emotional distress, PTSD, and other damages.

## COUNT II
## NEGLIGENCE
### (Against All Defendants)

38.    Plaintiff incorporates and re-alleges paragraphs 1 through 32 as if fully set forth herein.

39.    Defendants are named in this Count as follows: Nelson, for her direct failure to exercise reasonable care toward a child in her charge, pleaded in the alternative to Count I; the District of Columbia and DCPS, for systemic failures in hiring, training, and supervision; and Principal Trahan, individually, for her direct supervisory failures and affirmative acts of concealment. Plaintiff pleads negligence against Nelson in the alternative to battery pursuant to D.C. Super. Ct. Civ. R. 8(d)(2).

40.    Defendants owed Kuvel Brown a non-discretionary duty of care to provide him with a safe educational environment, to properly supervise school personnel, and to protect him from foreseeable harm while he was in their care at school.

41.    Defendants breached these duties through, among other things, violations of mandatory, ministerial obligations that do not implicate governmental discretion: (a) failing to comply with the mandatory child abuse reporting requirements of D.C. Code § 4-1321.02; (b) failing to immediately remove Defendant Nelson from contact with students after the assault was reported, in violation of DCPS mandatory employee removal protocols; (c) permitting Defendant Nelson to remain in the before-care program where she continued to have access to Kuvel and other vulnerable students; (d) failing to adequately screen, train, and supervise Nelson, including with respect to the specific requirements of working with special education students; (e) making false and misleading statements to Kuvel's parents that delayed protective and medical intervention; and (f) failing to implement and enforce adequate safeguards to protect special education students. Because these breaches involve behavior outside the scope of employment, and violations of mandatory statutory and regulatory duties rather than discretionary policy judgments, governmental immunity does not bar this claim. See *District of Columbia v. Thompson*, 570 A.2d 277 (D.C. 1990).

42.    As a direct and proximate result of Defendants' negligence, Kuvel Brown suffered serious physical and psychological harm including PTSD, ongoing anxiety, and disruption to his educational development.

**COUNT III**
**NEGLIGENT SUPERVISION AND RETENTION**
**(Against Defendants District of Columbia and DCPS)**

43.    Plaintiff incorporates and re-alleges paragraphs 1 through 32 as if fully set forth herein.

14

44.     Defendants District of Columbia and DCPS, as employers, had a duty to supervise, train, discipline, and when appropriate terminate employees who posed a danger to students. See *Phelan v. City of Mount Rainier*, 805 A.2d 930 (D.C. 2002).

45.     With respect to negligent supervision: Defendants failed to provide adequate supervision of Nelson's conduct during the before-care program, failed to maintain adequate protocols for monitoring staff behavior toward students, and failed to take required remedial action upon receiving actual notice of the assault. These supervisory failures are actionable regardless of whether prior notice of Nelson's specific propensity existed. That these supervisory deficiencies were structural and school-wide — rather than specific to Nelson — is evidenced by the fact that, upon information and belief, a second DCPS teacher at Neval Thomas Elementary engaged in conduct causing physical harm to a kindergarten student approximately thirty days after Trahan had actual knowledge of the Kuvel Brown assault. The recurrence of teacher-caused harm to a young student at the same school within thirty days, despite Trahan's actual notice of the first incident, demonstrates that Defendants failed to implement any meaningful supervisory response following the April 25, 2024 assault and that their supervisory failures were pervasive rather than isolated.

46.     With respect to negligent retention: Upon information and belief, Defendants had, prior to the April 25, 2024 assault, received complaints, reports, or other notice of concerning conduct by Nelson or other staff in the before-care program that put Defendants on actual or constructive notice of the risk she posed to students. Despite such notice, Defendants failed to investigate, discipline, or remove Nelson. Even absent specific prior incident notice, Defendants' failure to remove Nelson following the assault — despite actual knowledge thereof —

constitutes negligent retention for the continuing harm caused during the period she remained employed.

47.    This negligent supervision and retention directly and proximately caused or contributed to the ongoing harm suffered by Kuvel Brown, including the continuing psychological trauma caused by Nelson's visible presence at the school in the days following the assault.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

48.    Plaintiff incorporates and re-alleges paragraphs 1 through 32 as if fully set forth herein.

49.    The institutional conduct of Defendants — which is the primary focus of this Count, separate and distinct from the battery alleged in Count I — constitutes extreme and outrageous conduct beyond all possible bounds of decency. See *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980). Specifically: (a) following the unprovoked assault of a six-year-old special education student by their employee, Defendants, through Principal Trahan, made affirmatively false statements to the child's mother minimizing the assault and discouraging protective action; (b) a follow-up call was made directly to the family falsely denying that any assault had occurred; (c) Nelson was permitted to continue working in the same before-care program, where she was visible to Kuvel and his family, for days after the assault; (d) the parents were denied any meaningful participation in the investigation despite repeated requests; and (e) these actions were taken by institutional Defendants with actual knowledge of the assault, for the apparent purpose of self-protection at the expense of a traumatized six-year-old child and his family.

16

50.     As to Defendant Nelson individually: the deliberate, unprovoked use of physical force against a six-year-old special education student — a child in her supervisory charge with known vulnerabilities — itself constitutes extreme and outrageous conduct.

51.     As to Plaintiff Duvel Brown individually: the extreme and outrageous conduct was directed at him personally, not merely at his son. The false statements were made directly to him and his household. The denial of investigative access was a decision made in response to his specific requests. The institutional stonewalling was directed at him as the identified parent seeking accountability. Duvel Brown's IIED claim is not a bystander claim — it is a direct claim arising from conduct of Defendants aimed at him personally.

52.     Such conduct was intentional or reckless and has caused Kuvel Brown severe emotional distress, including PTSD, ongoing anxiety, persistent fear of school attendance, and disruption to his educational development. Duvel Brown has suffered severe emotional distress, loss of peace of mind, and the ongoing burden of caring for a psychologically traumatized child, as a direct result of conduct deliberately directed at him.

### COUNT V
### VIOLATION OF 42 U.S.C. § 1983
### FOURTEENTH AMENDMENT
### SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION
### (Against Defendants Nelson and Trahan, individually; District of Columbia and DCPS)

53.     Plaintiff incorporates and re-alleges paragraphs 1 through 32 as if fully set forth herein.

54.     Defendants acted under color of state law at all times relevant herein, within the meaning of 42 U.S.C. § 1983. Nelson and Trahan are sued in their **individual capacities** only for purposes of this Count. The District of Columbia and DCPS are sued as municipal entities subject to *Monell* liability.

17

55.    The primary constitutional theory in this Count is the Fourteenth Amendment's substantive due process protection of the liberty interest in bodily integrity. It is clearly established that students in public schools possess a constitutionally protected liberty interest in their bodily integrity and personal security, and that state employees who violate that interest through deliberate, conscience-shocking physical abuse violate the 15 F.3d 443 Fourteenth Amendment. See *Rochin v. California*, 342 U.S. 165 (1952); *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (executive action must 'shock the conscience'). The unprovoked striking of a six-year-old special education student by an adult teacher — a person exercising state authority over a vulnerable, non-consenting child — shocks the conscience and violates the Fourteenth Amendment.

56.    Plaintiff also asserts a Fourth Amendment excessive force theory in the alternative. The use of physical force by a state actor against a student in a school setting constitutes a seizure within the meaning of the Fourth Amendment, and unprovoked striking of a child constitutes unreasonable force. See *Graham v. Connor*, 490 U.S. 386 (1989). To the extent *Ingraham v. Wright*, 430 U.S. 651 (1977) is construed to limit Fourth Amendment claims arising from corporal punishment, the conduct here — an unprovoked assault unconnected to any disciplinary purpose — is distinguishable from school discipline and falls outside any Ingraham limitation.

57.    As to Defendant Nelson individually: the unprovoked physical assault of a six-year-old child was a deliberate act that shocks the conscience. It was clearly established at the time that such conduct by a state-employed teacher violates the Fourteenth Amendment. Qualified immunity does not apply because no reasonable official could have believed that striking a non-threatening six-year-old child in the face was constitutionally permissible. See *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

58.    As to Defendant Trahan individually: Trahan had actual knowledge of the assault immediately upon its occurrence. She then took affirmative steps — making false statements to parents, denying investigative access, and failing to remove Nelson — that perpetuated the ongoing constitutional harm to Kuvel Brown. A supervisor who has actual knowledge of a constitutional violation and responds with deliberate indifference, or who takes affirmative steps that prolong the violation, may be individually liable under § 1983. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). It was clearly established that a school principal could not with deliberate indifference permit a known abuser to continue supervising the victim-child. Qualified immunity does not apply to Trahan because her specific conduct — concealment, denial of access, and retention of Nelson — violated rights clearly established in the law of this jurisdiction.

59.    As to the District of Columbia and DCPS (*Monell* liability): Municipal liability under § 1983 is established where a constitutional violation is caused by: (i) an officially adopted unconstitutional policy; (ii) a widespread, well-settled custom or practice; or (iii) a failure to train that amounts to deliberate indifference. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *City of Canton v. Harris*, 489 U.S. 378 (1989). Plaintiffs allege the following specific bases for *Monell* liability:

(a) **Failure to Train:** DCPS failed to provide adequate training to staff assigned to supervise students in before-care and aftercare programs on the use of appropriate, non-physical behavioral management techniques, and on the legal prohibitions against use of physical force against students or directing students to use physical force against one another. Given that staff in these programs regularly manage young, behaviorally diverse students — including special education students with IEPs — the need for such training was obvious. The failure to provide it was a moving force behind the constitutional violation committed by Nelson. That this training

19

failure extended beyond Nelson is confirmed by the second incident referenced in paragraph 30, in which a different DCPS teacher at the same school — approximately thirty days later — directed a student to physically punch a kindergartner in the face. Two separate teachers at the same school committing similar constitutional violations within thirty days is strong evidence that the deficiency was in DCPS's training program, not in any individual employee's personal judgment.

(b) **Unconstitutional Custom of Non-Removal:** DCPS maintained an unofficial custom or practice of retaining employees accused of student abuse pending protracted administrative review, without regard for student safety. The decision to permit Nelson to continue working in the before-care program for multiple days after the assault, with actual knowledge of the assault at the principal level, reflects this custom and constitutes deliberate indifference to the constitutional rights of students. This custom is further confirmed by the institutional response to the second incident at Neval Thomas: upon information and belief, in that matter the DCPS staff member who directed a student to punch a kindergartner likewise remained employed following the incident, and DCPS's investigation concluded her conduct was 'unfounded' — despite consistent, corroborated accounts from the child, his mother, and a witness teacher. The repeated failure to remove staff members who cause physical harm to students, across two separate incidents at the same school within thirty days, is direct evidence of a well-settled DCPS custom of non-removal.

(c) **Unconstitutional Custom of Concealment:** DCPS, through Principal Trahan, enforced an unofficial custom of minimizing and concealing student abuse incidents to protect the institution from accountability. The affirmatively false statements made to the Brown family, the denial of investigative access, and the failure to make mandatory reports to law enforcement reflect a pattern of institutional self-protection that demonstrates deliberate indifference to the constitutional rights of students and their families. This custom is confirmed by three additional

facts drawn from the second incident at Neval Thomas: (i) upon information and belief, the DCPS investigator in that matter attempted to conduct a minor student's interview without a parent present — a tactic designed to obtain an unmonitored account of the incident; (ii) despite corroborated and consistent accounts from the child, his mother, and a witness teacher, DCPS's internal investigation concluded the allegations were 'unfounded'; and (iii) the District of Columbia Office of Risk Management denied the family's claim in its entirety, relying solely on DCPS's self-serving internal conclusion rather than any independent assessment. The use of internal investigations to generate predetermined 'unfounded' findings — applied to corroborated accounts of teacher-caused physical harm to children at the same school, within the same academic period, under the same principal — is powerful evidence of a municipal custom of concealment that operates as deliberate indifference to students' constitutional rights.

60.    As a direct and proximate result of these constitutional violations, Kuvel Brown has suffered and continues to suffer damages as alleged herein.

## COUNT VI
## BREACH OF DUTY OF CARE / IN LOCO PARENTIS
### (Against Defendants District of Columbia and DCPS)

61.    Plaintiff incorporates and re-alleges paragraphs 1 through 32 as if fully set forth herein.

62.    During school hours and before-care programming, Defendants District of Columbia and DCPS stood in loco parentis with respect to Kuvel Brown and owed him a heightened duty of care, particularly given his status as a special education student with an active IEP. See D.C. Code § 38-102. This duty encompasses not only the obligation to refrain from harming students, but the affirmative obligation to protect them from harm by school employees and to take immediate remedial action when harm occurs.

21

63.     Defendants breached this heightened duty by failing to protect Kuvel from physical harm by school staff, failing to immediately remove the assailant, failing to make mandatory reports, and failing to provide the family with accurate information necessary to obtain prompt medical and psychological treatment for Kuvel.

64.     This breach directly and proximately caused the damages alleged herein.

## COUNT VII
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973
### (Against Defendants District of Columbia and DCPS)

65.     Plaintiff incorporates and re-alleges paragraphs 1 through 32 as if fully set forth herein.

66.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination on the basis of disability by recipients of federal financial assistance. DCPS and the District of Columbia receive federal financial assistance and are subject to Section 504.

67.     Kuvel Brown is a qualified individual with a disability within the meaning of 29 U.S.C. § 705(20), having a qualifying IEP and eligibility for special education services.

68.     Defendants discriminated against Kuvel Brown **by reason of his disability** by: (a) assigning staff to supervise special education students in the before-care program who had not been trained on the specific requirements and legal protections applicable to students with disabilities; (b) failing to implement safeguards specifically designed to protect special education students — a distinctly vulnerable population — from physical abuse by staff; (c) permitting the assailant to remain in proximity to Kuvel following the assault, knowing Kuvel was a special education student with heightened vulnerability; and (d) failing to ensure that Kuvel received a safe educational environment as required by his IEP and as guaranteed by FAPE. The nexus to disability is direct: Nelson was assigned to supervise special education students, Kuvel's

vulnerability was known, and the failure of Defendants' protective systems was specifically with respect to the special education before-care population.

69.     To establish liability for compensatory damages under Section 504, Plaintiff must demonstrate deliberate indifference — actual knowledge of a substantial risk of harm and conscious disregard of that risk. See *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). Defendants' deliberate indifference is established by: (a) Principal Trahan's actual, immediate knowledge of the assault; (b) the decision to retain Nelson on campus despite that knowledge; (c) the failure to file the mandatory child abuse report; and (d) the affirmative acts of concealment directed at the family. These facts, taken together, demonstrate that responsible officials with authority to act had actual knowledge of a substantial risk to Kuvel as a disabled student and consciously disregarded it.

70.     As a direct and proximate result, Kuvel Brown has suffered damages including interference with receipt of FAPE, emotional distress, psychological trauma, and disruption to educational development.

## COUNT VIII
## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
### (Against Defendants District of Columbia and DCPS)

71.     Plaintiff incorporates and re-alleges paragraphs 1 through 32 as if fully set forth herein.

72.     Title II of the ADA, 42 U.S.C. §§ 12131 et seq., prohibits public entities from excluding from participation in, denying benefits to, or discriminating against qualified individuals with disabilities in the services, programs, or activities of the 42 U.S.C. § 12131entity.

73.     DCPS is a public entity within the meaning of (1). Kuvel Brown is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2).

23

74.     Defendants denied Kuvel Brown the benefits of a safe educational environment, failed to make reasonable modifications to their policies and practices to ensure his safety as a student with a disability, and discriminated against him by reason of his disability by failing to provide the specific protections and oversight required for students with IEPs in the before-care program. The deliberate indifference standard applies to ADA Title II compensatory damages claims as well as Section 504 claims. Deliberate indifference is established by the same facts alleged in Count VII, paragraph 68.

75.     As a direct and proximate result of these violations, Kuvel Brown has suffered the damages set forth herein.

## COUNT IX
### FRAUDULENT CONCEALMENT AND NEGLIGENT MISREPRESENTATION
### (Against Defendants District of Columbia, DCPS, and Principal Trahan)

76.     Plaintiff incorporates and re-alleges paragraphs 1 through 32 as if fully set forth herein.

77.     Defendants, through Principal Trahan and school staff, made multiple material false statements to Kuvel's parents regarding the nature, severity, and circumstances of the assault: (a) Principal Trahan described a deliberate hard slap by an adult teacher as a mere 'pop,' stated there was 'no need to be upset,' and actively discouraged the parents from taking protective action; and (b) a school employee placed a follow-up call to the family falsely denying that any assault had occurred, directly contradicting the earlier account.

78.     These statements were false. They were known to be false at the time they were made — Trahan had firsthand knowledge of the assault. They were made for the purpose of inducing the family to refrain from: reporting the incident to law enforcement; seeking immediate medical or psychological care for Kuvel; or taking other immediate protective action. This conduct

constitutes fraudulent concealment, which tolls any applicable statute of limitations and gives rise to independent liability. See *Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 298-299 (D.C. 2001).

79.    In the alternative, these misrepresentations were at minimum negligently made — made by persons (a principal and school staff member) who had a duty arising from their official relationship with the child's family to provide accurate information regarding an incident that occurred during school hours under their supervision. The duty to accurately report to parents what occurred to their child while in the school's care is a specific, non-discretionary obligation of school administrators under D.C. law.

80.    Plaintiffs Duvel Brown and Kuvel Brown reasonably relied upon these misrepresentations to their detriment, including delay in seeking appropriate medical and psychological treatment for Kuvel, delay in reporting to law enforcement, and delay in taking other protective measures.

81.    As a direct and proximate result, Plaintiffs have suffered damages including aggravated psychological harm from delayed treatment and the compounding harm of the institutional concealment.

## DAMAGES

82.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff Kuvel Brown (through his father and next friend Duvel Brown) has suffered and continues to suffer: (a) physical injury from the assault; (b) severe emotional distress and psychological trauma; (c) Post-Traumatic Stress Disorder (PTSD) diagnosed following the incident; (d) ongoing anxiety and persistent fear related to school attendance and school staff; (e) disruption to his educational development, academic progress, and his ability to access and benefit from his special education

program; (f) interference with his right to FAPE as a student with a disability; and (g) other damages to be proven at trial.

83.    Plaintiff Duvel Brown has individually suffered: (a) severe emotional distress and anxiety arising directly from Defendants' false and deceptive statements made to him and his household; (b) the burden of constantly reassuring and supporting a psychologically traumatized child; (c) damages arising from the ongoing impact on his family's daily life and Kuvel's ability to attend and engage in school; and (d) other damages to be proven at trial.

84.    Plaintiffs seek compensatory damages, punitive damages against Defendant Vicki Nelson and other appropriate defendants, attorneys' fees and costs under 42 U.S.C. § 1988 with respect to the § 1983 claims, attorneys' fees and costs under 29 U.S.C. § 794a(b) and 42 U.S.C. § 12205 with respect to the Section 504 and ADA claims, and all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Duvel Brown, individually and as parent and next friend of Kuvel Brown, respectfully request that this Court:

A.  Enter judgment in favor of Plaintiffs and against all Defendants;

B.  Award Plaintiffs compensatory damages in an amount to be determined at trial, including but not limited to damages for physical and emotional injury, pain and suffering, PTSD, interference with FAPE, and disruption to educational development;

C.  Award punitive damages against Defendant Vicki Nelson and such other Defendants whose conduct warrants such an award;

D.  Award attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a(b), 42 U.S.C. § 12205, and any other applicable statute;

E.  Award all such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

DUVEL BROWN, individually and as parent and next friend of KUVEL BROWN, a minor,

By Counsel,

/s/ *Christopher E. Brown*

_____
Christopher E. Brown, Esq. (Bar No. 458897)
**THE BROWN FIRM PLLC**
526 King St., Suite 213
Alexandria, Virginia 22314
Voice: 703-924-0223 | Fax: 703-997-2362
cbrown@brownfirmpllc.com

Date: 4/24/2026

27